LEMMON, Judge.
Frank Occhipinti has appealed from a judgment dismissing his suit on a promissory note after a trial on the merits. The only issues relate to the proof of the affirmative defense of payment.
The $5,000.00 note, dated January 13, 1964 and made to the order of bearer, was payable in five years with interest only after maturity. Joseph Marcello admitted that he executed the note as president of Stevie Motel, Inc. about the same time that his corporation purchased the Town and Country Motel. He testified that the previous owners of the motel had owed $30,000.00 to Southern Tours, Inc., a corporation in which Occhipinti owned one-sixth of the stock, and that Occhipinti requested the note as evidence of his share of the debt. However, Marcello further testified that Southern had agreed to pay his corporation $500.00 per month as rent for Southern’s headquarters on the motel premises and to credit this rent against the $30,000.00 debt for a period of five years, at which time the debt would be paid in full.
Occhipinti also stated that the note represented one-sixth of the debt owed to Southern, but he denied that he had made or authorized any rent-credit agreement.
The historical interrelationship between the owners of Southern and the owners of Town and Country is important to the determination of whether a rent-credit agreement was proved. In 1953 Southern built a garage to house six to eight buses on the motel premises. Additionally, Southern used two motel rooms as offices. However, Southern had never paid any rent prior to the 1964 sale of the motel.
At the time of the sale the owners of the motel were Occhipinti and his brother Roy, and Carlos and Joseph C. Marcello. Southern’s shareholders, in addition to the two Occhipinti brothers, were Anthony Marcello and Basil Ingrassia. Anthony Marcello explained that Southern had never been charged rent because the Occhipin-tis owned interests in both enterprises and because his brother was willing to allow “me to ride free.” However, he pointed out that, because of the same relationships, *191 Southern advanced money from time to time without interest to the motel enterprises. He further explained that Ingras-sia paid no rent, but managed the tour without salary.
Apparently, Southern’s corporate business was operated in an informal manner, and the loans to the motel owners, although not authorized by formal resolution, formed the basis of the $30,000.00 debt. However, this debt was owed to the corporation and not to the shareholders.[1] Therefore, if payment to the corporation was proved, then the debt (evidenced in part by the promissory note) was extinguished.
On the disputed issue of whether Southern agreed to begin paying rent when the motel ownership changed and to allow credit for this rent against the previous indebtedness, neither Ingrassia nor Anthony Marcello could state that he specifically consented to such an agreement at a particular meeting. However, each admitted that he was aware of and satisfied with this arrangement. Finally, and most importantly, both testified that while Southern paid no rent from January, 1964 until January, 1969, Southern did pay rent at the rate of $500.00 per month from January, 1969 until June, 1970, when the business was moved off the motel premises. Inasmuch as Occhipinti also confirmed these payments during that approximate period, it is evident that Stevie Motel, Inc. gave and Southern accepted the benefit of rent-free occupancy (reasonably valued at $30,000.00) during the exact period alleged in the defense of payment and that Southern did pay rent in the stipulated amount thereafter. Under these circumstances we cannot say that the trial judge committed manifest error in accepting the proof of payment offered by Marcello and rejecting the conflicting evidence presented by Oc-chipinti.
The judgment is affirmed.
Affirmed.

. Neither of the other shareholders, Ingrassia and Anthony Marcello, were paid in cash or by note.